IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTHONY SANCHEZ,

        Plaintiff,

vs.                                                              Civ. No. 07-816 JCH/LFG

JOHN E. POTTER, Postmaster General,
United States Postal Service,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's *Motion for Summary Judgment*, filed October 10, 2008 [Doc. 43], and Plaintiff's *Motion for Leave to File Supplemental Affidavit and Motion for Sanctions for Spoliation*, filed January 21, 2009 [Doc. 55]. The Court having considered the motions, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that Defendant's Motion for Summary Judgment is well taken and will be GRANTED, and that Plaintiff's Motion for Leave to File Supplemental Affidavit and Motion for Sanctions for Spoliation will be granted to allow Plaintiff's supplemental affidavit to be part of the record, but denied with respect to sanctions for spoliation.

## BACKGROUND

This is an action filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* The facts and allegations in this case are presented below in the light most favorable to Plaintiff, as required in this context. Plaintiff Anthony Sanchez ("Sanchez") began his employment with Defendant United States Postal Service ("USPS") in July 1999 as a mailhandler with the Albuquerque, New

Mexico Main Post Office. Sanchez allegedly injured his back in November 1999. Despite a doctor's request that Sanchez be placed on light duty status, Defendant refused to accommodate Sanchez's condition. On August 8, 2000, Sanchez again allegedly injured his back. As a result of this injury, on August 14, 2000, Sanchez filed a worker's compensation claim with the United States Department of Labor through its Injury Compensation Unit ("ICU"). Over the next four years, Defendant frequently gave Plaintiff light duty assignments, but occasionally told him that it had no light duty work for him. Plaintiff was not paid for time for which he had no light duty available. Other times, Defendant gave Plaintiff simple duties which Plaintiff characterized as insulting, such as sitting at a desk and watching an automatic door to make sure that it did not malfunction. Such duties subjected Plaintiff to insults from co-workers and resulted in a nervous breakdown. During this period, Plaintiff missed time at work due to re-injuring his back several times and as a result of being placed on indefinite non-duty status at the request of his doctor after being committed to a psychiatric hospital in late June 2001. During this period as well, Plaintiff filed numerous formal and informal EEO complaints and grievances, alleging such harassment related to his back injury as not being allowed to leave early when injured, being sent home when he was told there was no light duty work for him, being subject to disrespectful remarks by his supervisors and co-workers, and being forced to work beyond his work restrictions. Plaintiff never filed suit on any of these EEO complaints, despite having received several right to sue letters.

Based on information that the ICU received concerning Plaintiff's activities while he was on sick leave, the Postal Inspection Service conducted an investigation beginning in March 2004. On September 30, 2004, Defendant placed Sanchez on administrative leave because of information received as a result of the investigation, which included videotape of Plaintiff

violating lifting restrictions on at least three occasions. While on administrative leave, Plaintiff was not allowed in any postal facility, except as a customer. Plaintiff remained on paid suspension until his termination, which was effective August 14, 2005. Two days prior to the effective date of Plaintiff's termination, Plant Manager Paul Nistler issued a letter of decision of removal to Sanchez on the basis of three charges: failure to disclose information related to his criminal history on his application for employment, performing activities outside of his medical restrictions while on sick leave, and failure to report his history of back problems on his application for employment. *See* Motion for Summary Judgment (hereinafter "MSJ") [Doc. 43], Ex. D.

Plaintiff filed an appeal of his removal with the Merit Service Protection Board ("MSPB") on August 12, 2005, alleging that he was terminated based on his handicap and in retaliation for his previous filings of EEO complaints. On August 30, 2006, Sanchez and Defendant settled his MSPB appeal, as a result of which the Postal Service agreed to medically retire Plaintiff retroactive to his dismissal date.

After filing his appeal to the MSPB concerning his termination, Plaintiff also filed an informal EEO complaint on September 7, 2005. This complaint alleged retaliation and disability discrimination. The specific actions that Plaintiff alleged constituted discrimination were: "terminated on 8/12/05; backpay lost for being sent home; made to work past my medical restrictions; fired for filing EEO complaints." MSJ [Doc. 43], Ex. J. On October 26, 2005, Plaintiff received notice that he had 15 days to file a formal complaint, and he timely filed a formal complaint on November 9, 2005. On November 22, 2005, the EEO Compliance and Appeals Office notified Sanchez that it was dismissing his EEO complaint because he was already pursuing his charges through his MSPB appeal and, under 29 C.F.R. § 1614.107(a)(4), he

could not pursue a claim on the same matter through both the EEOC and the MSPB.  *See id.*, Ex. K.  Plaintiff claims that the dismissal of his EEO appeal was not a final agency decision, because it did not provide him with appeal rights as required by 29 C.F.R. § 1614.110(b), and thus can serve as the basis for his suit.

Although his September 2005 EEO complaint did not mention such conduct, Plaintiff now claims that he was subject to harassment in the 45 day period leading up to the filing of his EEO complaint, despite having been on administrative leave since September 30, 2004.  Sanchez claims that he was harassed by his neighbor, Arsenio Archuleta ("Archuleta"), who he alleges was investigating Plaintiff on behalf of the Postal Service and who, through extreme hostility, attempted to provoke Plaintiff into a fight on several occasions so that he could film him violating his work restrictions.  *See* Plaintiff's Response to Defendant's Motion for Summary Judgment (hereinafter "Pl. Resp.") [Doc. 46] at 9; *id.*, Ex. D at ¶¶ 4-7.  The harassment by Archuleta began shortly after Plaintiff moved to his new residence in late 2004 or early 2005, was "continual and constant," and ultimately forced Plaintiff to move in April 2006.  *Id.*, Ex. D at ¶ 4, 7.  This harassment followed the same pattern as the harassment by Plaintiff's neighbor at Plaintiff's prior residence, which was also allegedly pursued in an attempt to provoke Plaintiff into a physical altercation for Postal Service cameras, and was so severe that it forced Plaintiff to move to his new residence, where he was harassed by Archuleta.  *See* Amended Complaint [Doc. 9] at ¶¶ 75, 80.

## **LEGAL STANDARD**

Summary Judgment is appropriate if "the record contains no evidence of a genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 247 (1986); *Woodman v. Runyon*, 132 F.3d

1330, 1337 (10th Cir. 1997); Fed. R. Civ. P. 56(c). The Court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 484 (10th Cir. 1995). The moving party has the initial burden of showing there is no genuine issue of material fact. *Anderson*, 477 U.S. at 256. Once the moving party has met its burden, the non-moving party must do more than merely show that there is some doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party may not rest on the mere allegations or denials of the pleadings, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248, 256. Although the Court views the evidence and draws all inferences in the light most favorable to the party opposing summary judgment, that party still "must identify sufficient evidence which would require submission of the case to a jury." *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Anderson*, 477 U.S. at 248. Speculation or hunches will not suffice to defeat summary judgment. *See Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005).

## DISCUSSION

A. <u>Are Plaintiff's Claims Barred by the MSPB Settlement?</u>

In filing his notice of appeal to the MSPB, Plaintiff checked the box for "removal" as the action he was contesting. *See* Pl. Opp. [Doc. 46], Ex. B. In explaining why he believed Defendant was wrong in terminating him, Plaintiff wrote: "The agency is using this as a pretext to remove the appellant based on his on the job injury." *Id*. In stating the remedy he sought, Plaintiff wrote: "The appellant would like not to return to the postal service and reapply for medical disability. The appellant had previously applied for disability that was approved and

later notified by OPM that it was not approved.  The appellant also wants to be reimbursed for being sent home by the agency while on limited duty and not paid." *Id.*   In January 2006, the Administrative Law Judge handling the case issued an order summarizing a prehearing conference that had been held.  The order said that Plaintiff denied all three charges of misconduct.  It further said "the appellant also alleges that he was discriminated against based on his disability." *See* MSJ [Doc. 43], Ex. E at 2.

On August 23, 2006, parties reached a settlement of the MSPB appeal.  The Settlement Agreement and Release signed by the parties provides for a "permanent and unconditional release and waiver by the appellant...of any and all claims asserted by or on behalf of the appellant in this matter known as Anthony Sanchez v. U.S. Postal Service, designated at MSPB Docket No. DE-0752-05-0480-I-1."  MSJ [Doc. 43], Ex. F at 1, ¶ I.  The agreement also provides that "The promises of each party contained in this agreement shall constitute an accord, satisfaction and compromise of all issues between them."  *Id*. at 2, ¶ III.  The agreement further states that "the agreement is a full and final resolution of all issues in MSPB Docket Number DE-0752-05-0480-I-1."  *Id.* at 4, ¶ IX.  Finally, the agreement states that "Appellant agrees that...he is, through this agreement, releasing the Postal Service from any and all claims he may have against the Postal Service relating to the issues brought forth in this complaint."  *Id*. at 4-5, ¶ XI.

Defendant argues that all claims related to Plaintiff's treatment while working for Defendant were settled by the MSPB agreement, and he is precluded by the agreement from pursuing such claims through his EEO complaint.  By its plain terms, the Settlement Agreement applies only to those claims asserted in the MSPB appeal.  Plaintiff contends that the MSPB appeal addressed only claims related to his termination, and that his claims of discriminatory and retaliatory harassment, unrelated to termination, were not part of his appeal and are not precluded

by the Settlement Agreement.  Indeed, Plaintiff argues that the MSPB does not even have jurisdiction to address harassment claims, as demonstrated by the fact that the form for filing an MSPB appeal does not have a box to check to protest alleged harassment, but only to appeal personnel actions or decisions such as removal, suspension, or demotion.  *See* Pl. Opp. [Doc. 46], Ex. B.  For that reason, Plaintiff claims, the harassment claims were never submitted to the MSPB.

Although the Settlement Agreement spoke of constituting "an accord, satisfaction and compromise of all issues between [the parties]," other provisions of the agreement, as previously discussed, made clear that the agreement related only to the issues brought forth in the appeal, rather than acting as a blanket waiver of any and all claims that Plaintiff could ever have.  A more detailed settlement agreement that itemized each issue between the parties that the agreement was intended to resolve would have alerted the Court to the scope of the settlement.  But without further evidence of what constituted "all issues in MSPB Docket Number DE-0752-05-0480-I-1," the Court cannot conclusively determine that all of Plaintiff's current claims of harassment that were unrelated to his termination were addressed by his MSPB appeal and covered by the Settlement Agreement.  To the extent that Plaintiff has a lawful vehicle for bringing claims of discriminatory or retaliatory harassment that were not clearly part of his MSPB appeal, such claims are not be precluded by the Settlement Agreement.

However, three of the four specific claims that Plaintiff raised in his September 2005 EEO complaint were specifically addressed by the MSPB appeal, and are therefore precluded by the Settlement Agreement from being raised again.  Plaintiff complained of being "terminated on 8/12/05" and being "fired for filing EEO complaints."  MSJ [Doc. 43], Ex. J.  Because his MSPB appeal explicitly contested the circumstances surrounding Plaintiff's removal, the settlement

precludes his raising issues related to his termination a second time in this forum.  Similarly, although arguably not related to his termination, Plaintiff's MSPB appeal sought reimbursement "for being sent home by the agency while on limited duty and not paid."  Pl. Opp. [Doc. 46], Ex. B.  Thus, this claim was explicitly one of the "issues in MSPB Docket Number DE-0752-05-0480-I-1," and Plaintiff is precluded by the settlement from raising it again in his EEO complaint as well.  Thus, the only specific claim in his September EEO complaint that is not clearly precluded by the agreement is that Plaintiff "was made to work past [his] medical restrictions."  MSJ [Doc. 43], Ex. J.

      B.      <u>Has Plaintiff Timely Exhausted His Administrative Remedies?</u>

The notice that Plaintiff received from the Office of EEO Compliance and Appeals stated that it was refusing to process his September 2005 EEO complaint because the EEO complaint concerned an action that was already being appealed to the MSPB.  *See* MSJ [Doc. 43], Ex. K.  The notice cited 29 C.F.R. § 1614.302(b), which states that a person may not file an EEO complaint and an MSPB appeal on the same matter, and that whichever is filed first (in this case, the MSPB appeal) will be considered an election to proceed in that forum.  *See id*.  The notice further cited EEOC Regulations § 1614.107(a)(4) in refusing to process Plaintiff's complaint based on his election to pursue an MSPB appeal.  Plaintiff argues that this notice did not constitute a "Final Decision" because it did not contain notice of the right to appeal the final action to the EEOC, as required by 29 C.F.R. § 1614.110(b), and that he had no forum to argue that his harassment claims not related to his termination were not part of the "same matter" as the claims being contested in the MSPB appeal.  The Court agrees.  Plaintiff timely filed his formal EEO complaint on November 9, 2005.  Because more than 180 days passed from the date of filing the formal EEO complaint, with no appeal filed and no final action on the complaint, the

8

current action in District Court is authorized under 29 C.F.R. § 1614.407(b).

Although Plaintiff's complaint itself may have been timely, the subject matter of the complaint is not timely, and the complaint cannot survive summary judgment. Pre-complaint or informal counseling is the first step in the EEO complaint process, and the aggrieved employee must consult with an agency counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). An employee who fails to comply with this limitations period is barred from seeking judicial relief in federal court on those untimely claims, absent a defense of equitable tolling. *See Davis v. United States Postal Serv.*, 142 F.3d 1334, 1339 (10th Cir. 1998). With regard to equitable tolling, the applicable regulations provide that "the agency... shall extend the 45-day time limit...when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them." 29 C.F.R. § 1614.105(a)(2). The application of equitable tolling rests within the discretion of the trial court. *See Montoya v. Chao*, 296 F.2d 952, 957 (10th Cir. 2002). Having filed, by his own estimation, "over 20 EEO complaints," Plaintiff is clearly no stranger to the EEO process. *See* Plaintiff's Motion for Leave to File Supplemental Affidavit [Doc. 55], Affidavit of Anthony Sanchez at ¶ 5. Therefore, he can reasonably be expected to have been aware of the time frames in which he needed to raise his claims, and the Court does not find a basis for equitable tolling in this case.

The Postal Service placed Plaintiff on administrative leave on September 30, 2004. Plaintiff did not contact an EEO counselor until September 7, 2005. The only concrete claim in his EEO complaint that is not barred by the settlement agreement reached as part of the MSPB appeals process is that he "was made to work past my medical restrictions." Because his administrative leave prevented Plaintiff from going to the workplace, he could not have been

9

"made to work past [his] medical restrictions" after September 30, 2004. Because he did not contact an EEO counselor within 45 days of that date, his medical restrictions claim is time barred. Plaintiff does not cite any other type of harassment or discrimination in his EEO complaint, but alludes to other purported discrimination that took place between when he was hired in 1999 and when he was placed on administrative leave. These other claims are time barred as well.

Plaintiff makes one allegation in his complaint that does not fall outside of the 45-day time limit. He contends that he was continually harassed by his neighbor, Arsenio Archuleta at the behest of the Postal Service, in order to provoke him into fighting, so that he could be filmed violating his work restrictions. Because Plaintiff alleges that this constant harassment began in late 2004 or early 2005, and lasted until he moved in 2006, the conduct complained of clearly occurred within 45 days of the September 7, 2005 filing of his EEO complaint. However, Plaintiff's complaint with respect to the Archuleta harassment is insufficient to survive summary judgment for two reasons. First, Plaintiff's EEO complaint makes no mention of the harassment. Plaintiff claims that, in the counseling for the September 2005 EEO complaint he "complained about the harassment even though the word harassment does not appear." *See* Pl. Resp. [Doc. 46] Ex. D at ¶ 19. An informal complaint serves the purpose of placing an agency on notice of an alleged violation and giving it "an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance." *See Woodman v. Runyon*, 132 F.3d 1330, 1342 (10th Cir. 1997). The Court is loath to allow a claim to move forward solely on the basis of an allegation not even specified in the initial EEO complaint, as this would defeat the goal of providing the agency with notice of an alleged violation to give it an opportunity for corrective action.

Even if Plaintiff could pursue the Archuleta harassment allegation, he has not come forward with sufficient evidence to survive summary judgment. Plaintiff has failed to tie Archuleta's alleged actions to Defendant. Archuleta's alleged harassment began in late 2004 or early 2005, after Defendant had already completed its investigation into Plaintiff's violations of his work restrictions and had already placed Plaintiff on administrative leave. The harassment continued until April 2006, months after Plaintiff had been discharged from employment with the Postal Service. Plaintiff presents no evidence, and offers nothing more than his speculation, that the Postal Service recruited Mr. Archuleta to harass Plaintiff in order to get him to fight, so that he could be filmed violating his work restrictions that were no longer even applicable once he was on administrative leave or no longer employed. The sole piece of evidence that Plaintiff cites is the deposition testimony of Postal Inspector Diane Owens, who stated that she spoke to an unidentified male neighbor that lived across the street from Plaintiff from whom she obtained permission to use his yard to conduct surveillance and from whom she later received a video of Plaintiff. *See* Pl. Resp. [Doc. 46] at 10. However, in her Declaration dated December 9, 2008, Inspector Owens clarifies that the unnamed neighbor from whom she got permission to conduct surveillance and from whom she received the video was Mr. Rudy Baca, not Anthony Archuleta. Plaintiff has offered no evidence to support his supposition that the neighbor referred to in Ms. Owens's deposition was Anthony Archuleta, nor has he offered any evidence to dispute Ms. Owens's sworn statement that no investigative work was done on Plaintiff's case after November 5, 2004, nor has he offered any evidence that the Postal Service requested that a civilian attempt to provoke Plaintiff. As such, Plaintiff's remaining claim contains nothing more than unsupported allegations, conclusory in nature, and must be dismissed.

    C.  <u>Plaintiff's Motion for Spoliation</u>

Over a month after the parties completed briefing on Defendant's motion for summary judgment, Plaintiff filed a *Motion for Leave to File Supplemental Affidavit and Motion for Sanctions for Spoliation* on January 21, 2009 [Doc. 55].  In that motion, Plaintiff argues that, because the dismissal of the September 2005 EEO charge did not contain appeal rights, resulting in a charge that remained open under 29 C.F.R. § 1614.407(b), the Court should presume that prior EEO claims brought by Plaintiff remain open as well.  Plaintiff, who was represented by counsel at the time he filed his EEO complaints, cannot locate paperwork related to the majority of the prior EEO complaints that he filed, and he is relying on Defendant to do so.  The affidavit that Plaintiff seeks to file alleges that Defendant's EEO Compliance Officer told him that Defendant had destroyed the log of his EEO complaints, thereby depriving Plaintiff evidence to establish that prior EEO complaints relating to harassment are still open.  However, the records relating to Plaintiff's September 2005 EEO complaint that is the subject of this action were not destroyed, and they were provided to Plaintiff.  Plaintiff brought his motion to counter Defendant's argument that he had failed to exhaust his administrative remedies with respect to his September 2005 EEO complaint.  Because the Court has held that Plaintiff did not fail to exhaust his remedies with respect to that claim, and that claim is the only one before the Court, the disposition of prior EEO claims is not relevant to this case.  Because the Court reviewed and considered Plaintiff's proposed supplemental affidavit in reaching its disposition, it will consider Plaintiff's supplemental affidavit as having been filed for purposes of creating a record, but will deny his motion for sanctions for spoliation of evidence related to other EEO claims not related to this action.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's *Motion for Summary Judgment* [Doc. 43] is

GRANTED and Plaintiff's *Motion for Leave to File Supplemental Affidavit and Motion for Sanctions for Spoliation* [Doc. 55] is GRANTED to allow Plaintiff's supplemental affidavit to be part of the record, but DENIED with respect to sanctions for spoliation.

                                                             **UNITED STATES DISTRICT JUDGE**